## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ALI EL-HALLANI, et al**,

                Plaintiffs,

                                      No. 13-cv-12983
    vs.                                    Hon. Gerald E. Rosen

**HUNTINGTON NATIONAL BANK**,

                Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

Undeterred by this Court's prior identification of all of the reasons why their First Amended Complaint failed to meet Rule 8(a)'s pleading standard, Plaintiffs have filed a Second Amended Complaint supported only by one new allegation. That one allegation, the results of a last minute survey conducted by Plaintiffs' process server of *six* individuals departing two of Defendant's branches in metro-Detroit, purports to identify *four* similarly situated individuals whom Defendant treated differently. Not surprisingly, Defendant has again moved to dismiss. It has also moved for sanctions. Having reviewed and considered Defendant's Motion and supporting brief, Plaintiffs' response thereto, and the entire record of this matter, the Court has determined that the relevant allegations, facts, and legal

arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Therefore, the Court will decide this matter "on the briefs." See Eastern District of Michigan Local Rule 7.1(f)(2). As set forth below, Plaintiffs' sole additional evidence does not come close to "nudg[ing] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). This Court now dismisses Plaintiffs' Second Amended Complaint with Prejudice.

## II. PERTINENT FACTS

Because the parties and the Court are quite familiar with Plaintiffs' prior pleadings, the Court hereby incorporates its prior articulation of the facts at issue in this matter. *El-Hallani v. Huntington Nat. Bank*, 2014 WL 988957, at *1-4 (E.D. Mich. March 13, 2014) (Rosen, C.J.). Plaintiffs' Second Amended Complaint is basically a carbon copy of their First Amended Complaint, adding and/or modifying just a few paragraphs to support their contention that Defendant closed their bank accounts because of their race and/or national origin. (Plfs' 2d. Am. Compl., Dkt. # 23, at ¶¶ 30-35, 39). Specifically, Plaintiffs now incorporate four exhibits: (1) a collection of documents that they say identifies four similarly situated individuals whom Defendant treated differently; (2) an affidavit by Samia Sareini that provides details concerning complaints the Arab American Civil

2

Rights League has received regarding "account closures from several local banks, including Huntington National Bank;" (3) an affidavit by Hussein Dabaja that provides information relative to his experience as a former employee at Defendant's Oakman branch in Dearborn, Michigan; and (4) an affidavit by co-Plaintiff Mark Manuaeel that provides additional information concerning the closure of his account. (Exs. A-D to Plfs' 2d. Am. Compl., Dkt. ## 23-3, 23-4, 23-5, 26).

As an initial matter, the three affidavits are not "new" documents to this litigation. Plaintiffs attached *the very same affidavits* in response to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint. (Exs. B-D to Plfs' Resp., Dkt. ## 17-3, 17-4, 17-5). This Court has already considered these affidavits, finding in no uncertain terms that they did not shore up the plainly conclusory allegations set forth in the First Amended Complaint sufficient to plausibly state a claim for relief. *El-Hallani*, 2014 WL 988957, at *2-4, 10. Plaintiffs' Response does not even acknowledge this Court's prior consideration of these affidavits, let alone present any argument as to why this Court should view these affidavits any differently this time around. Accordingly, the Court will not revisit its prior conclusion that "the additional facts contained within [the three affidavits] do not satisfy *Twombly/Iqbal's* plausibility standard -- a standard that simply does not

permit this Court to breathe life into claims that are wholly supported by conclusory allegations and formulaic recitations of the elements." *Id.* at *10.

The only truly new allegations in Plaintiffs' Second Amended Complaint are the allegations related to Plaintiffs' purported identification of four similarly situated individuals whom Defendant treated differently. Those allegations are set forth in Paragraph 30:

> Several non-Middle Eastern and non-Arab similarly situated account holders at Huntington National Bank have not had their bank accounts closed with no explanation. See **Exhibit A** for a specific listing of the non-Middle Eastern and non-Arab similarly situated account holders at Huntington National Bank who have not had their bank accounts closed with no explanation.

(Plfs' 2d. Am. Compl., Dkt. # 23, at ¶ 30; *see also* ¶¶ 40, 50, 64, 81). Exhibit A is a collection of documents relating to a survey conducted by an employee of Elite Process Service. (Ex. A to Plfs' 2d. Am. Compl., Dkt. # 26). That employee, Patricia Carter, surveyed six individuals leaving Defendant's branches in St. Clair Shores and Warren, Michigan on April 1 and 2, 2014 -- the two days immediately before Plaintiffs needed to file the Second Amended Complaint. (*Id.* at 3). The ten question survey asked the following questions:

1. Name?
2. Address?
3. Telephone Number?
4. What do you consider your race: White; African-American; Asian; Hispanic; or Other?
5. Do you currently bank with Huntington?

4

6. Do you have business accounts, personal accounts, or both with Huntington?
7. What type of business has its account at Huntington?
8. How long have you had accounts with Huntington?
9. Has Huntington ever closed one of your accounts?
10. Do you use any of your Huntington accounts for improper or illegal purposes?

(*Id.* at 4-7).

From this survey, Plaintiffs have identified four individuals whom they contend Defendant treated differently.[1] All four are white, have personal bank accounts, have never used their accounts for an improper or illegal purpose, and Defendant has never closed their accounts. (*Id.*). They live in Detroit, Roseville, and St. Clair Shores, Michigan.[2] (*Id.*). Finally, the amount of time these individuals have had accounts with Defendant varies: one is a new account holder; one has banked with Defendant for "a few months;" one has banked with Defendant for a year; and one responded with "n/a." (*Id.*).

_____

[1] Carter's affidavit indicates that she surveyed six individuals, but Plaintiffs only attached four of these surveys. Plaintiffs' documents make clear that they only identify these four individuals as those similarly situated individuals whom Defendant treated differently. (Ex. A to Plfs' 2d. Am. Compl., Dkt. # 26, at 2). Plaintiffs' Response also refused to provide any information about those individuals whom Carter interviewed, but did not sign an individual survey. (Plfs' Resp., Dkt. # 29, at 27 n.3).

[2] Plaintiffs assert that one of these customers lives in Taylor, Michigan. (Ex. A to Plfs' 2d. Am. Compl., Dkt. # 26, at 2). A review of this customer's survey, however, indicates that she lives on Taylor Street in Saint Clair Shores. (*Id.* at 7).

## III. DISCUSSION

### A.   Plaintiffs' Second Amended Complaint Remains Deficient

Plaintiffs still maintain that Defendant discriminated against them on the basis of their race and/or national origin in violation of 42 U.S.C. §§ 1981, 1982 and Michigan's Elliott-Larsen Civil Rights Act (ELCRA), M.C.L. § 37.2302(a), when it closed their bank accounts without explanation.[3]   Though Plaintiffs' Second Amended Complaint ostensibly sets forth its new facts in the four attached documents referenced above, this Court can consider these documents without converting Defendant's Rule 12(b)(6) motion into one for summary judgment. Fed. R. Civ. P. 10(c); *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss.").   Therefore, this Court must follow the pleading standards set forth by *Twombly/Iqbal*:

> Plaintiffs' *only* burden at this stage is to allege facts that plausibly support an inference of discrimination -- to set forth "sufficient 'factual content' from which [this] court . . . could 'draw the reasonable inference'" that Defendant closed Plaintiffs' bank accounts due to their race.   This "plausibility" threshold "occupies that wide

---

[3]  Plaintiffs' Second Amended Complaint again hints at a claim of religious discrimination (Plfs' 2d. Am. Compl., Dkt. # 23, at ¶¶ 4, 10, 12, 21-22, 29, 36-38, 40, 73-76, 78-83), but Plaintiffs' Response does not argue that they are advancing such a claim.  Nor did Carter's survey ask questions regarding religious affiliation. For these reasons and those set forth in this Court's prior Opinion, Plaintiffs have failed to state a claim for relief under Section 1981, Section 1982, and ELCRA on account of being (or perceived as being) Muslim. *El-Hallani*, 2014 WL 988957, at *6.

> space between 'possibility' and 'probability.'  If a reasonable court
> can draw the necessary inference from the factual material stated in
> the complaint, the plausibility standard has been satisfied."

*El-Hallani*, 2014 WL 988957, at *5 n.2 (citing *Keys v. Humana, Inc.*, 684 F.3d

605, 610 (6th Cir. 2012)); *see also id.* at *4-5 (discussing the standard of review

for Rule 12(b)(6) motions).  Drawing upon this Court's judicial experience and

common sense, *Keys*, 684 F.3d at 610, this Court concludes that Plaintiffs' Second

Amended Complaint once more does not plausibly raise an inference of

discriminatory conduct and rather still just "infer[s] . . . the mere possibility of

misconduct" on behalf of Defendant.  *Iqbal*, 556 U.S. at 678.

### 1.    Plaintiffs' identification of alleged similarly situated individuals

This is a purported class action seeking to rectify allegedly discriminatory

banking practices.  Plaintiffs assert that Defendant has closed at least twenty-five --

maybe over one hundred -- bank accounts associated with Arab and/or Middle

Eastern individuals without explanation.  (Plfs' 2d. Am. Compl., Dkt. # 23, at ¶

10).    Yet, even after this Court's Opinion identified the First Amended

Complaint's numerous pleading flaws in this post-*Twombly/Iqbal* world and

expressly noted that it dismissed Plaintiffs' First Amended Complaint without

prejudice "out of an abundance of caution," *El-Hallani*, 2014 WL 988957, at *10,

all Plaintiffs could muster to salvage their claims is an eleventh hour survey of at

most six of Defendant's customers in the entire metro-Detroit area.  This survey simply does not cure Plaintiffs' pleading defects.

At the outset and given the parties' briefing on the issue, the Court is compelled to once more highlight what role the identification of similarly situated individuals who were allegedly treated differently plays for purposes of evaluating a motion under Federal Rule of Civil Procedure 12(b)(6).  It is well-settled that complaints need not establish a prima facie case of discrimination in order to satisfy *Twombly/Iqbal*.  *Id.* at *5 n.2 (citing *Keys*, 684 F.3d at 609-10).  The Court is aware of no authority requiring a plaintiff in every circumstance to affirmatively identify a similarly situated individual in order to adequately plead a claim of discrimination.  Doing so, of course, is likely one way to satisfy *Twombly/Iqbal*. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) ("No doubt disparate treatment of similarly situated people may support an inference of discrimination.").  But pleaders beware.  It is not enough to just allege that an individual "is similarly situated and that his more favorable treatment . . . evidences unlawful discrimination[.  Such allegations] are . . . little more than 'legal conclusions couched as factual allegations' and need not be accepted as true under Rule 12(b)(6) scrutiny.'"  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 684 (6th Cir. 2011) (citing *Twombly*, 550 U.S. at 555).

8

In support of its argument that Plaintiffs have not identified any similarly situated individuals, Defendant contends that "Exhibit A is plainly devoid of any evidentiary value" and therefore should not be considered. (Def's Mtn., Dkt. # 27, at 15). In contrast to a Rule 56 motion where the evidence must be admissible at trial, *Alexander v. Caresource*, 576 F.3d 551, 558 (6th Cir. 2008), Rule 12(b)(6) does not require a plaintiff to proffer admissible evidence in order to state a claim for relief. Instead, it mandates that this Court assume that Plaintiffs' allegations are true -- even those that are "unrealistic or nonsensical." *Iqbal*, 556 U.S. at 681 ("To be clear, we do not reject . . . bald allegations on the ground that they are unrealistic or nonsensical. It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Penalbert-Rosa v. Fortuno-Burset,* 631 F.3d 592, 596 (1st Cir. 2011) ("Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not."); *In re Packaged Ice Antitrust Lit.*, 723 F. Supp. 2d 987, 1012 n.15 (E.D. Mich. 2010) (Borman, J.) ("Whether the allegations in the complaint are based on hearsay is not relevant to a motion under Rule 12(b)(6).") (citation omitted). Regardless of whether admissible or not, Carter's survey must set forth sufficient facts to infer discriminatory conduct in order for Plaintiffs to satisfy Rule 8(a)'s pleading requirements. It fails to do so for at least four reasons.

9

First, Carter conducted the survey outside of two of Defendant's branches in Detroit's northern and northeastern suburbs: Warren and St. Clair Shores.  She talked to customers who lived in Detroit, St. Clair Shores, and Roseville (another northeastern suburb).  But Plaintiffs live on the opposite side of the metro-Detroit area in the northwestern and western suburbs of West Bloomfield and Canton.  They also do not suggest that they banked at the branches at which Carter conducted her survey.  These discrepancies in location do not merit an inference of discriminatory conduct.

Second, the length of time in which these four individuals have had accounts with Defendant completely undermines any claim of similarity to Plaintiffs.  Plaintiffs make clear that Defendant closed their accounts over a year ago in March 2013.  Yet, two of the individuals just recently opened accounts, one has only banked with Defendant for a year, and one responded with "n/a."  At best, Plaintiffs have identified *only one individual* who *perhaps* held an account with Defendant at the time when it closed Plaintiffs' accounts.  That one white customer across the entire metro-Detroit area *maybe* banked with Defendant at the same time Defendant closed Plaintiffs' accounts does not lead to a plausible inference of discriminatory conduct.

Third, the customers' responses regarding the core demographic characteristic at issue in this litigation -- race/national origin -- raise more

10

questions than answers.  Carter's survey identifies five racial categories for the participants to circle: White; African-American; Asian; Hispanic; or Other. Despite alleging that Defendant systematically closed the bank accounts of those who are Arab and/or Middle Eastern, Carter's survey did not specifically list these characteristics and rather just provided the participants with the ability to self-identify as Arab and/or Middle Eastern in the "Other" field.  Moreover, the U.S. Census Bureau defines "white" as "a person having origins in any of the original peoples of Europe, the Middle East, or North Africa.  It includes people who indicated their race as 'White' or report entries such as Irish, German, Italian, Lebanese, Arab, Moroccan, or Caucasian."  Information on Race, U.S. Census Bureau,     http://quickfacts.census.gov/qfd/meta/long_RHI125212.htm.[4]        As Defendant rightly points out, "[t]he surveyed persons' identification of themselves as 'white' does not mean they are not of Arab or Middle Eastern ethnicity or descent."  (Def's Mtn., Dkt. # 27, at 16).[5]

---

[4]  The Court may consider this matter of public record without converting Defendant's motion to one for summary judgment.  *Commercial Money Ctr.*, 508 F.3d at 336.

[5]  On this point, Plaintiffs claim that Defendant suggests that "'Arabs' are not proper plaintiffs in a § 1981 case."  (Plfs' Resp., Dkt. # 29, at 32).  Characterizing Defendant's argument as "frivolous," "myopic," and "disturbing," Plaintiffs request sanctions under Rule 11, this Court's inherent power, and 28 U.S.C. § 1927.  (*Id.* at 33).  Plaintiffs' characterization completely distorts Defendant's position: Nowhere in its pleadings does Defendant argue that Arabs cannot assert claims under § 1981.  And, as Plaintiffs hint (albeit by quoting directly from the Supreme Court's syllabus in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604

And fourth, the response to Carter's question regarding how the individuals used their accounts is incredibly predictable. Carter asked each participant, "Do you use your Huntington accounts for improper or illegal purposes?" Common sense dictates that if a *current customer* departs *their own bank* and is then asked by a *stranger* whether he or she was using a bank account *for improper or illegal purposes*, the answer will be no.

In sum, this Court refuses to do an end-around *Twombly/Iqbal* by drawing an inference of discrimination from the additional facts presented in Carter's hastily cobbled together survey. It is just common sense that Defendant -- a national bank with a significant business presence in this District -- has hundreds if not thousands of customers in metro-Detroit who are white, have accounts in good standing, and have not used their accounts for any illegal or improper purposes. Plaintiffs' Second Amended Complaint now identifies four customers -- all of whom reside in different communities than Plaintiffs, banked at different branches than Plaintiffs, and held accounts at different times than Plaintiffs -- as similarly situated individuals. The nature of Carter's survey and the allegations Plaintiffs draw from this survey "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a

_____

(1987), which "constitutes no part of the opinion of the court"), nor could it. *Id.* at 613 (holding that § 1981 encompasses claims of "intentional discrimination solely because of . . . ancestry or ethnic characteristics," including those of Arabian ancestry).

complaint's sufficiency." *16630 Southfield Ltd. P'ship*, 727 F.3d at 506.  Because Plaintiffs rest their entire Second Amended Complaint on the identification of these four individuals and because they "have not identified any similarly situated individuals whom [Defendant] treated better," *id.* at 506, Plaintiffs' Second Amended Complaint does not satisfy *Twombly/Iqbal's* plausibility standard.[6]

### 2.    Plaintiffs' other arguments

Though Plaintiffs' Second Amended Complaint only added the results of Carter's survey discussed above, Plaintiffs' briefing -- which reiterates arguments they previously made in response to Defendant's prior motion -- necessitates a brief response.  First, Plaintiffs' briefing again suggests that this Court should infer discriminatory conduct because Defendant allegedly closed profitable accounts without explanation:

> Closing profitable business accounts involving, in some cases, large amounts of money is profoundly contrary to the manifest financial

---

[6] To be sure, the identification of a similarly situated individual was not the only path Plaintiffs could have walked down when crafting their pleading.  They could have, for example, set forth facts evidencing some discriminatory intent on behalf of Defendant -- like a statement by one of "Defendant's employees . . . reflecting a discriminatory bias towards Arabs."  *El-Hallani*, 2014 WL 988957, at *10.  But they did not do so.  They also could have provided some detail as to the nature of the alleged twenty-five to one hundred accounts that Defendant closed without explanation -- like a snapshot of their banking history to show the amount of business conducted with Defendant -- sufficient to draw an inference that Defendant's conduct was so profoundly contrary to Defendant's manifest financial interests, so far outside of widely-accepted business norms, and so arbitrary on its face that the conduct supports a rational inference of discrimination.  *See infra*, at 13-15.  But again, they did not do so.

> interests of a banking institution, particularly where Plaintiffs and other identified potential class members have not engaged in any illegal activity, nor had they done anything to cause the bank to lose money by having them as a customer. Indeed, on many occasions the individual branches have attempted to discourage such closures, precisely because the branches were making money having the accounts open.

(Plfs' Resp., Dkt. # 29, at 30). In examining § 1981 claims, the Sixth Circuit has recognized that in order "to account for situations in the commercial establishment context in which a plaintiff cannot identify other similarly situated persons," a plaintiff may show that he or she "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory." *Christian v. Wal-Mart Stores*, *Inc.*, 252 F.3d 862, 871 (6th Cir. 2001). Several factors may demonstrate the "markedly hostile" conduct, including "whether the conduct 'is (1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination.'" *Id.* (citation omitted).

The problem with Plaintiffs' position here is that a motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint, not additional facts that are set forth in response to a motion to dismiss. Plaintiffs' Second Amended Complaint does not allege that Defendant closed profitable business accounts or provide any information as to how much money was in their accounts

14

at the time of their closure, and the Court cannot consider these new "facts" for purposes of Defendant's motion. *See Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 399 (6th Cir. 2013) ("[T]he appropriate method for adding new factual allegations to a complaint is not via a[] . . . brief, but by filing an amended complaint.") (citation omitted); *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").[7]   A close examination of Plaintiffs' Second Amended Complaint with regards to this issue reveals only that Plaintiffs have alleged that Defendant's "conduct deviated from business norms in such a manner to support an inference of discrimination" and that in 2008/2009, "local managers would try to convince headquarters that certain accounts should not be closed . . . [due to their] good relationships with their customers."  (Plfs' 2d. Am. Compl., Dkt. # 23, at ¶ 84; Ex. C to Plfs' 2d. Am. Compl., Dkt. # 23-4, at ¶ 11). On these facts alone, the Court again refuses to draw an inference of "markedly hostile" conduct.

The second repeat argument deals with the notion that they have allegedly identified at least twenty-five individuals who had their accounts closed by Defendant.  This Court has already addressed that allegation. *See El-Hallani*, 2014 WL 988957, at *9-10.   Other than generally referencing these twenty-five

---

[7] And even were this Court to consider these facts, they are too general and conclusory to draw an inference of "markedly hostile" conduct.

individuals again in their Second Amended Complaint, Plaintiffs do not assert any additional facts that would permit this Court to draw an inference of discrimination based on the closure of their accounts. Indeed, the opposite is true; with such a bald assertion, the Court is left to wonder why the twenty-five other individuals have failed to come forward with any additional facts to support this litigation.

Third, Plaintiffs again point to the fact that Defendant has not provided an explanation for why it closed their accounts. This Court already addressed that allegation as well: a defendant need not "come forward with an 'obvious alternative explanation'" for its conduct where a plaintiff's complaint "merely pleads facts consistent with liability." *Id.* at *10 (citing *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012)). A holding otherwise "would improperly shift Rule 8(a)'s pleading burden away from a plaintiff's obligation to set forth facts sufficient to nudge[ ] . . . claims across the line from conceivable to plausible." *Id.* at *10 (citations omitted).

Fourth and finally, Plaintiffs briefly argue that Defendant's "quarterly lists" of accounts to close constitutes "direct evidence" of discrimination. (Plfs' Resp., Dkt. # 29, at 30). "In discrimination cases, direct evidence is that evidence which, if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the [entity]'s actions." *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 829 (6th Cir. 2000) (citation omitted and emphasis added). Plaintiffs'

draw this "quarterly lists" allegation from the affidavit submitted by Hussein Dabaja, which this Court already considered and deemed insufficient:

> Dabaja's observations as a former employee do not sufficiently span the factual divide between possibility and plausibility.  Notably, Dabaja last worked for Defendant in September 2009 -- four years before the facts at issue in this case.  Though he attests that the "closing lists" contained the names of Arab and Chaldean businesses resulting in the closure of over 200 accounts from 2008 through 2009, Dabaja presented no facts indicating that Defendant did so *on account of race and did so four years later when it closed Plaintiffs' accounts*. . . . Dabaja's attestation that similarly situated "non-Middle Eastern bank account holders" did not suffer from similar closures is merely a label and conclusion under *Twombly* that just "will not do."

*El-Hallani*, 2014 WL 988957, at *10 (citing *Twombly*, 550 U.S. at 555).

Plaintiffs have therefore not pled any new facts sufficient to a state claim for relief under Section 1981, Section 1982, and ELCRA.  The Court now dismisses Plaintiffs' Second Amended Complaint with Prejudice.

## B.    Sanctions Are Not Appropriate

Under 28 U.S.C. § 1927, this Court may impose an award of fees and costs against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously."   The Sixth Circuit has explained that an award of fees is appropriate under § 1927, with or "without a finding of bad faith," if "an attorney knows or reasonably should know that a claim pursued is frivolous or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Ridder v. City of Springfield,* 109 F.3d 288, 298 (6th Cir. 1997) (citation omitted).

17

It has also noted "that the application of § 1927 is warranted when an attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1049 (6th Cir. 1996) (citation omitted). This misconduct "must amount to more than simple inadvertence or negligence that has frustrated the trial judge." *Id.*

Plaintiffs' attorneys have put this Court in a bind. On the one hand, "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Ridder*, 109 F.3d at 299 (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)). On the other hand, this Court previously took great measures to set forth all of the various reasons why Plaintiffs' First Amended Complaint did not pass Rule 8(a)'s pleading standard, but allowed Plaintiffs to have a proverbial third bite at the apple. In the face of this Court's Opinion, the Second Amended Complaint incorporates the three affidavits -- without *any* changes -- despite this Court's express holding that the affidavits did not cure Plaintiffs' pleading deficiencies. The *only other change* to Plaintiffs' pleading was the addition of a survey conducted two days before Plaintiffs had to file their Second Amended Complaint. Plaintiffs' counsel should have known that this sole additional

evidence does not even pass the straight-face test, let alone set forth facts sufficient to plausibly draw the inference that Defendant closed Plaintiffs' accounts due to their race and/or ethnicity.

Though closer than most cases in which parties' request Section 1927 sanctions, the filing of Plaintiffs' Second Amended Complaint was not so egregious so as to merit sanctions under Section 1927 given the Sixth Circuit's admonition regarding sanctioning a losing plaintiff in a civil rights action. Had Defendant sought alternative relief through Federal Rule of Civil Procedure 11, and had Plaintiffs continued on in the face of potential Rule 11 sanctions, this Court might have viewed Defendant's request for sanctions differently.[8]

## IV. CONCLUSION

For these reasons and those set forth in this Court's March 13, 2014 Opinion,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint Under Rule 12(b)(6) and to Sanction

---

[8] In the alternative to sanctions under Section 1927, Defendant moves for sanctions under this Court's inherent power to sanction bad faith conduct. (Def's Mtn., Dkt. # 27, at 22-24). The Court does not find that counsels' conduct in this matter rises to the level of bad faith. *See, e.g., Issa v. Provident Funding Grp.*, 2010 WL 3245408, at *3-4 (E.D. Mich. Aug. 17, 2010) (Rosen, C.J.) (discussing the Sixth Circuit's standards for evaluating bad faith in another matter involving one of Plaintiffs' counsel, Kassem Dakhlallah).

Plaintiffs and their Counsel Pursuant to 28 U.S.C. § 1927 and the Inherent Power

of the Court [Dkt. # 27] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiffs' Second Amended Complaint is

dismissed with prejudice.

**IT IS SO ORDERED.**


Dated: May 29, 2014           s/Gerald E. Rosen
                              Chief Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on May 29, 2014, by electronic and/or ordinary mail.

                              s/Julie Owens
                              Case Manager, (313) 234-5135

20