## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ALI EL-HALLANI, et al**,

     Plaintiffs,

              No. 13-cv-12983
  vs.             Hon. Gerald E. Rosen

**HUNTINGTON NATIONAL BANK**,

     Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO REOPEN CASE AND FOR SANCTIONS UNDER RULE 11

In this civil rights litigation, Plaintiffs claim that Defendant closed their respective bank accounts due to their race, ethnicity, and/or religious affiliation in violation of federal and state law. On March 13, 2014, this Court dismissed Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) without prejudice. *El-Hallani v. Huntington Nat. Bank*, 2014 WL 988957 (E.D. Mich. March 13, 2014) (Rosen, C.J.). Plaintiffs filed a Second Amended Complaint, which only added one new allegation: "the results of a last minute survey conducted by Plaintiffs' process server of *six* individuals departing two of Defendant's branches in metro-Detroit . . . purport[ing] to identify *four* similarly situated individuals whom Defendant treated differently." *El-Hallani v.*

*Huntington Nat. Bank*, 2014 WL 2217237, at *1-2 (E.D. Mich. May 29, 2014)

(Rosen, C.J.).[1]  This Court summarized these four individuals as follows:

> All four are white, have personal bank accounts, have never used their
> accounts for an improper or illegal purpose, and Defendant has never
> closed their accounts.  They live in Detroit, Roseville, and St. Clair
> Shores, Michigan.  Finally, the amount of time these individuals have
> had accounts with Defendant varies: one is a new account holder; one
> has banked with Defendant for "a few months;" one has banked with
> Defendant for a year; and one responded with "n/a."

*Id.* at *2.

This Court found that such new facts did not "cure Plaintiffs' pleading

defects."  *Id.* at *3.  They simply did not "merit an inference of discriminatory

conduct" based upon (1) the locations at which Plaintiffs conducted their survey,

(2) the length in time in which the "similarly situated" individuals held accounts

with Defendant, (3) the survey's requirement for Arab and/or Middle Eastern

individuals to self-identify as such, and (4) the manner in which Plaintiffs' process

server asked questions of the "similarly situated" individuals.  *Id.* at *3-5.  Stated

differently:

> It is just common sense that Defendant -- a national bank with a
> significant business presence in this District -- has hundreds if not
> thousands of customers in metro-Detroit who are white, have accounts
> in good standing, and have not used their accounts for any illegal or
> improper purposes.  Plaintiffs' Second Amended Complaint now
> identifies   four   customers   --   all   of   whom   reside   in   different

---

[1] Plaintiffs' Second Amended Complaint also added facts that Plaintiffs submitted
in response to Defendant's first motion to dismiss, which this Court previously
considered.  *El-Hallani*, 2014 WL 2217237, at *1-2.

> communities than Plaintiffs, banked at different branches than Plaintiffs, and held accounts at different times than Plaintiffs -- as similarly situated individuals. The nature of Carter's survey and the allegations Plaintiffs draw from this survey "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." Because Plaintiffs rest their entire Second Amended Complaint on the identification of these four individuals and because they "have not identified any similarly situated individuals whom [Defendant] treated better," Plaintiffs' Second Amended Complaint does not satisfy *Twombly/Iqbal's* plausibility standard.

*Id.* at *5 (citing *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 506 (6th Cir. 2013)). Accordingly, this Court dismissed Plaintiffs' Second Amended Complaint with prejudice, as well as declined to impose sanctions under 28 U.S.C. § 1927 and this Court's inherent power. *Id.* at *8-9 & n.8.

Defendant has now moved for Rule 11 Sanctions.[2] (Def's Mtn., Dkt. # 33). Rule 11(b) provides that:

> [b]y presenting to the court a pleading, written motion, or other paper . . . an . . . unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

---

[2] On June 27, 2014, Plaintiffs filed a notice of appeal with respect to this Court's May 29, 2014 Opinion and Order. (Dkt. # 37). It is well-established that "a district court retains jurisdiction to entertain a motion for Rule 11 sanctions even after the filing of a notice of appeal." *Val-Land Farms, Inc. v. Third Nat. Bank in Knoxville*, 937 F.2d 1110, 1117 (6th Cir. 1991). This Court, therefore, has jurisdiction to resolve Defendant's Motion. Additionally, there is no dispute that Defendant complied with Rule 11's "safe harbor" provision.

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  Defendant argues that Plaintiffs filed the Second Amended Complaint for "no proper purpose" and without "evidentiary support" in violation of Rule 11(b)(1) and (b)(3).  (Def's Mtn., Dkt. # 33, at 3).  In support, Defendant asserts that "[n]o reasonable person, and certainly no attorney, could believe the questionnaires submitted by Plaintiffs provided evidentiary support for their claims."  (*Id.* at 4).  While this Court absolutely agrees that the survey did not set forth facts sufficient to plausibly infer discriminatory conduct in order to state a claim under *Twombly/Iqbal*, it disagrees that the submission of such a survey rises to the level of a "truly egregious case[] of misconduct" to warrant sanctions against a losing plaintiff in a civil rights action.  *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 581 (6th Cir. 2013) (citation omitted).

"[T]he test for the imposition of Rule 11 sanctions is whether the individual's conduct was reasonable under the circumstances."  *Tropf v. Fidelity*

*Nat'l. Title Ins. Co.,* 289 F.3d 929, 939 (6th Cir. 2002) (citations omitted).  The

imposition of sanctions for Rule 11 violations is discretionary, not mandatory.

*Hartleip v. McNeilab, Inc.,* 83 F.3d 767, 778 (6th Cir. 1996).  Moreover, such

sanctions "must be limited to what suffices to deter repetition of the conduct or

comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

The 1993 amendments to Rule 11 were intended to "emphasize[ ] the duty of

candor by subjecting litigants to potential sanctions for insisting upon a position

after it is no longer tenable."  Fed. R. Civ. P. 11 advisory committee's notes to

1993 amendments.  A court must also take heed that the "purpose of Rule 11

sanctions is to deter rather than to compensate," Fed. R. Civ. P. 11 advisory

committee notes, especially when the conduct amounts to a litigation strategy of

"press forward at all costs." *B & H Med., L.L. C. v. ABP Admin., Inc.,* 354 F. Supp.

2d 746, 750 (E.D. Mich. 2005) (Rosen, J.).  In recognition of this deterrence

principle, the Sixth Circuit has noted an inherent difficulty in imposing Rule 11

sanctions at the pleading stage in litigation:

> *As a general proposition, a district court should be hesitant to*
> *determine that a party's complaint is in violation of Rule 11(b) when*
> *the suit is dismissed pursuant to Rule 12(b)(6) and there is nothing*
> *before the court, save the bare allegations of the complaint.*  The
> situation is very different when sanctions are sought after discovery is
> complete and a motion for summary judgment under Fed. R. Civ. P.
> 56 is before the court, which charges the challenged pleader with
> failing to produce evidence of a sufficient factual basis to support the
> claims alleged in the complaint. . . .  At the pleading stage in the
> litigation, ordinarily there is little or no evidence before the court at

all, and such facts as are alleged, must be interpreted in favor of the
nonmovant. While a party is bound by Rule 11 to refrain from filing a
complaint "for any improper purpose," from making claims
"[un]warranted by existing law," or from making "allegations and
other factual contentions [without] evidentiary support," *making those
determinations is difficult when there is nothing before the court
except the challenged complaint.* We do not dispute "that the central
purpose of Rule 11 is to deter baseless filings in district court," and
courts must be wary of plaintiffs who may make baseless allegations
of state corruption in an effort to survive the early stages of § 1983
suits. But, "Rule [11] must be read in light of concerns that it will
spawn satellite litigation and chill vigorous advocacy." Rule 11 "'is
not intended to chill an attorney's enthusiasm or creativity in pursuing
factual or legal theories.'"

*Tahfs v. Proctor*, 316 F.3d 584, 594-95 (6th Cir. 2003) (internal citations omitted
and emphasis added).

*Tahfs* is especially illustrative given that there, the Sixth Circuit found that
the district court abused its "considerable deference" when it imposed Rule 11
sanctions in a civil rights matter. *Id.* at 594. The *Tahfs* plaintiff alleged that two
private citizens acted in concert with staff members of Michigan's Third Circuit
Court to obtain personal protection orders (PPOs) that violated the plaintiff's First
and Fourteenth Amendment rights. *Id.* at 588. Her attorney's pre-complaint
investigation "showed the following: for unexplained reasons, Tahfs's hearing
contesting the PPOs was repeatedly delayed; the files from the PPO were
inaccessible to Tahfs's attorney when he attempted to access them at the
courthouse; and Tahfs reported to her attorney that [Defendant] William Proctor, a
local television news reporter, had threatened to use his 'connections' in Wayne

County Circuit Court staff members." *Id.* at 595.  The attorney filed the complaint believing "that discovery would both reveal the identity of the court staffers with whom Proctor allegedly had 'connections,' and reveal how those 'connections' resulted in joint corrupt action.  Those plans were frustrated by the defendants' timely motion to dismiss pursuant to Rule 12(b)(6)." *Id.*   In reversing the imposition of Rule 11 sanctions, the Sixth Circuit emphasized that "[w]hile Tahfs's attorney should have realized that his suit was unlikely to survive a Rule 12(b)(6) motion absent more specific allegations of corruption, that alone would not warrant the imposition of sanctions. . . . A complaint does not merit sanctions under Rule 11 simply because it merits dismissal pursuant to Rule 12(b)(6)." *Id.*

As with *Tahfs*, Plaintiffs' Second Amended Complaint was "inadequate, but not frivolous."   *Id.* at 596.   Plaintiffs presented, at best, allegations of "unexplained" account closures and attempted to show a discriminatory link by identifying four white customers who did not have their accounts closed. Defendant claims that Plaintiffs' survey was "facially and objectively devoid of any evidentiary value. . . . [It wa]s at best anecdotal and not persuasive."  (Def's Mtn., Dkt. # 33, at 12).  But as this Court previously noted, "Rule 12(b)(6) does not require a plaintiff to proffer admissible evidence in order to state a claim for relief.  Instead, it mandates that this Court assume that Plaintiffs' allegations are true-even those that are 'unrealistic or nonsensical.'"  *El-Hallani*, 2014 WL

2217237, at *4 (citation omitted).  Plaintiffs' attorneys, just as in *Tahfs*, "should have realized that [Plaintiffs'] suit was unlikely to survive a Rule 12(b)(6) motion absent more specific allegations" tying their purported identification of similarly situated individuals to their claims.[3]  In sum, Plaintiffs' use of the survey to attempt to bridge the *Twombly/Iqbal* problems this Court previously identified when it dismissed Plaintiffs' First Amended Complaint without prejudice was ineffective, but not unreasonable.

Most cases where sanctions are imposed generally involve far more egregious conduct than that complained of here.  For instance, in *B & H Medical,* this Court imposed sanctions on plaintiff and its counsel when they failed to dismiss the case after a lengthy discovery period, extended on two separate occasions, failed to disclose any support for their claims.  354 F. Supp. 2d. at 748. Likewise, in *Haisha v. Country Wide Bank, FSB,* 2011 WL 3268104 (E.D. Mich. July 29, 2011) (Cleland, J.), the court grounded its sanctions on finding that (1) the complaint was fraught with significant factual inaccuracies, one of which implied fraud upon the court; (2) a majority of the counts lacked any legal foundation; and (3) many of the same claims had been repeatedly dismissed in Michigan courts

---

[3] This Court also noted in dismissing Plaintiffs' Second Amended Complaint that the identification of similarly situated individuals "was not the only path Plaintiffs could have walked down when crafting their pleading."  *El-Hallani*, 2014 WL 2217237, at *5 n.6.

8

thereby putting counsel on notice that they lacked legal support.  *Id.* at *4.  No such conduct is present here.

In sum, Defendant needed to clear a high hurdle for this Court to impose sanctions *in this civil rights case that this Court dismissed on the pleadings*.  It has not made a showing of "truly egregious" misconduct that reflects a "press forward at all costs" strategy that warrants the "extreme sanction" of Rule 11 sanctions. Upon these facts, an award of sanctions in this matter would not deter violative conduct.

For these reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Reopen Case and for Sanctions Under Rule 11 (Dkt. # 33) is DENIED.

**Dated:  August 12, 2014**            **s/Gerald E. Rosen**_____
                                       Chief, Judge, United States District Court

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 12, 2014, by electronic and/or ordinary mail.

s/Julie Owens_____
Case Manager, (313) 234-5135